# Smith *v.* The State.

*Indictment for Murder.*

1. *Pleas in abatement may be filed after plea to merits, in discretion
   of lower court; when record shows filing.*—Where the defend-
   ant had pleaded to the merits the trial court in its discretion
   could permit the withdrawal of such plea and allow the filing
   of pleas in abatement, and, though the record does not in terms
   show that the court permitted the filing of such pleas, they
   were ordered to be filed and made a part of the record and the
   court sustained a demurrer thereto, the conclusion is that the
   court allowed the filing of the pleas and they will be considered
   by this court as having been filed.

2. *Presence of stenographer in grand jury room; when authorized.*
   A plea in abatement setting up that there was present during
   the examination of the witnesses before the grand jury which
   found the indictment, a stenographer, duly sworn as such for
   the grand jury, and who was not a member thereof, is bad on
   demurrer, the act of December 10, 1900 (Acts 1900-01, p. 308)
   authorizing the employment of a stenographer to attend before
   the grand jury.

3. *Concurrence of grand jurors; when shown.*—Where the record
   shows that the grand jury which returned the indictment was
   composed of seventeen members, a plea in abatement, that one
   of the jurors was by reason of extreme deafness incompetent
   to hear the evidence, is bad on demurrer, since it does not ap-
   pear that sixteen of the grand jurors did not hear the evidence
   and vote upon it to find the indictment.

4. *Indictment for murder; averment of means.*—An indictment
   which charges that the defendant unlawfully and with malice
   aforethought killed A. B. "by hitting him or striking him with
   a hatchet or with some blunt instrument to the grand jury un-
   known," etc., is sufficient and not subject to demurrer.

5. *Same; evidence of drinking, when irrelevant.*—On a trial under
   an indictment for murder, evidence that deceased was a man
   who drank a good deal is properly excluded when offered be-
   fore there was any evidence of self-defense, or any other issue
   which might have rendered the evidence relevant.

6. *Same; cross examination of witness.*—In such case, where the
   State brought out on direct examination of a witness that the

[Smith v. The State.]

deceased was in a saloon shortly before the killing and was "drinking heavily," it was the right of the defendant on cross-examination to have the witness state the facts upon which the statement was predicated.

7. *Same; immaterial testimony.*—In such case, whether the deceased was in the saloon on the day previous to the day on which he was killed, was immaterial to the issues.

8. *Same; objection to question and answer.*—When an objection is made and sustained to a question propounded to a witness, but the record is silent as to the answer expected, this court cannot consider the correctness of the ruling.

9. *Same; predicate for confession; when sufficient.*—Where the officer who arrested the defendant testified that he made no threats against nor promises to the defendant nor offered him any inducements to make a statement, nor did others in his presence, he was properly permitted to state what the defendant told him about the killing.

10. *Same; same; when evidence of mob immaterial.*—Where the defendant sought to show that a mob was formed on the night of the killing to take him away from the officer who arrested him, and it does not appear that such fact existed prior to or contemporaneous with the making of a statement to the officer regarding the killing, the court properly sustained an objection to questions calling for such testimony.

11. *Same; character for honesty not in issue.*—On a trial under an indictment for murder the defendant's character for honesty is not in issue.

12. *Same; character of defendant's parents.*—In such case, the character of defendant's parents was not a subject of inquiry.

13. *Same; irrelevant testimony.*—In such case the fact that deceased claimed to have been robbed, had no tendency to prove that he was not a person who maintained a good character for peace and quietude.

14. *Same; argument of counsel; effect of showing for absent witness.* In such case, where the state has admitted showings of certain witnesses for the purpose of going to trial, a statement of the solicitor that the State did not thereby admit the truth of such testimony, but that if the witnesses were present they would swear as there shown, was proper.

15. *Same; right of defendant to have depositions and showings taken out by the jury.*—Under Code, sections 1834 and 5292, it is not a matter of right on the part of the defendant to have the jury take written depositions with them for use in their deliberations; and where the court sustained objections to certain

portions of the showings and depositions of defendant's witnesses, and the portions which were not ruled out were read to the jury, the court properly refused to permit the jury to carry the showings and depositions out with them.

16. *Same; alternative averments.*—Under an indictment for murder alleging the means or instrument with which the killing was done in the alternative—"by hitting him or by striking him with a hatchet or with some blunt instrument to the grand jury unknown"—a charge which instructs the jury to find the defendant not guilty if the grand jury knew from the evidence before them the means or instrument used in producing death, is properly refused unless limited to the count containing the averment that the means were unknown.

17. *Same; charge to jury.*—Charges which invade the province of the jury are properly refused.

18. *Same; same; reasonable doubt.*—A charge that "a reasonable doubt is a doubt for which a reason can be given," is bad and properly refused.

19. *Same; same; conviction of manslaughter under indictment for murder.*—Under an indictment in the Code form (Code Section 4923, No. 63) the defendant may be convicted of manslaughter, and a charge to the jury to acquit the defendant if there is no proof of any material allegation of murder, is properly refused.

20. *Same; same; freedom from fault.*—Charges to the jury under an indictment for murder to acquit the defendant under his plea of self-defense if he was reasonably without fault in bringing on the di,fficulty, are properly refused.

21. *Same; same; constituents of self-defense.*—A charge to the jury under an indictment for murder which fails to set forth the constituents of self-defense, is properly refused.

APPEAL from Criminal Court of Jefferson.

Tried before the HON. D. A. GREENE.

The appellant, Taylor Smith, was indicted for the murder of artin J. Conniff, was tried and convicted of murder in the second degree and his punishment fixed at thirty years imprisonment in the penitentiary.

The indictment was in the following form:

"The State of Alabama,

Jefferson County.

The Criminal Court of

Jefferson County.

[Smith v. The State.]

The grand jury of said county charge that before the finding of this indictment Taylor Smith, unlawfully and with malice aforethought killed Martin J. Conniff, by hitting him or by striking him with a hatchet, or with some blunt instrument to the grand jury unknown, against the peace and dignity of the State of Alabama.

H. P. Heflin, Solicitor.

On May 6, 1904, the defendant filed a plea in abatement to the indictment, containing four grounds, the first and second grounds, being in substance that there was present during the examination of witnesses before the grand jury that returned the indictment, one Jack T. Stallings, as a stenographer for the grand jury, duly sworn, who was not a member of said grand jury, nor an officer authorized by law to be present. The third and fourth grounds were in substance, that all of the grand jurors who voted to return the indictment did not hear the evidence introduced, upon which the indictment was found, in that one of the jurors was by reason of extreme deafness, incompetent to hear and understand the evidence. The plea was duly sworn to by the defendant. The court sustained a demurrer to the plea interposed by the solicitor. Thereupon the defendant demurred to the indictment on several grounds, in substance as follows: 1st: The alternative averment that deceased was killed "with some blunt instrument to the grand jury unknown" is vague, indefinite and uncertain. 2nd: It does not appear whether it was intended to charge the deceased was killed by being hit or struck with a hatchet, or some blunt instrument to the grand jury unknown, or that the words "by hitting him or by striking him" refer to the averment charging the killing to have been with a hatchet. 3rd: For that it does not clearly appear from the averments of the indictment whether it is intended to charge that the death of the deceased was caused by being hit or struck with some blunt instru-

ment, or by the use of said blunt instrument in some other manner. The court overruled the demurrer.

The evidence for the State tended to show that the deceased was killed by the defendant as the result of a blow on the head, with a hatchet; that the defendant was a porter in a bar in the city of Birmingham and the deceased came in and called for defendant who was in a back room of the bar; that defendant came out, but deceased did not speak to him and defendant returned to the room, followed by deceased and resumed his duties when deceased struck him with a small piece of wood, and the two engaged in a scuffle during which defendant struck deceased on the head with a hatchet, causing his death.

The evidence for the defendant tended to show that his character was good in the neighborhood where he had formerly lived, Hale County, Ala., this being shown by depositions of witnesses residing at that place; that when deceased came in the room where defendant was working the latter was cutting kindling with a hatchet; that deceased asked him his name and what he was doing and defendant replied to the question, and deceased then struck him in the back with a piece of wood and defendant ran, followed by deceased, and the latter struck him again and grabbed him and a scuffle followed in which defendant inflicted the fatal blow. There was other evidence tending to show that the character of deceased for peace and quietude was not good and that he was a turbulent, quarrelsome and dangerous man.

The exceptions reserved by the defendant to the admissibility of evidence are sufficiently shown in the opinion.

In the course of his argument to the jury the solicitor used the following language: "Now, as to the showings of these witnesses who were absent, but whose testimony the State admitted for the purpose of going to trial, it was not meant that we admitted its truth, but that if witnesses were present they would swear what was contained in the showings." The defendant objected to this part of the argument of the solicitor and moved to exclude the same from the jury, the court overruled the

objection and motion and the defendant excepted.

Upon the introduction of the evidence the defendant requested the court to give the following written charges to the jury, which the court refused to give and he excepted: (1.) "If the jury believe from the evidence that the grand jury which found the indictment in this case knew from the evidence before them the means or instrument used in producing death of the deceased, they cannot find the defendant guilty." (2.) "If the jury believe from the evidence that from the evidence before it the grand jury that returned the indictment in this case knew that Martin J. Conniff, the deceased, was killed with a hatchet, then the defendant could not be convicted under the present indictment." (3.) "If the jury believe from the evidence that the grand jury which found the indictment in this case knew or could have learned by the employment of reasonable diligence, the weapon or instrument used by the defendant in causing the death of Martin J. Conniff, the deceased, the defendant cannot be convicted under the present indictment." (4.) "If the jury believe the evidence they will find the defendant not guilty." (5.) "If the jury believe the evidence they cannot find the defendant guilty of murder in the first degree." (6.) "If the jury find believe the evidence they cannot find the defendant guilty of murder in the second degree." (12.) "A reasonable doubt is a doubt for which a reason can be given." (17.) "If the jury believe from the evidence that at the time the defendant inflicted the fatal blow on the deceased that he was not actuated by malice, but that he acted from a suddenly aroused, adequate provocation, or that he acted in self-defense, they must acquit him." (19.) "If the jury believe from the evidence that the defendant was reasonably without fault in bringing on the fatal difficulty and that at the time he inflicted the fatal wound on the deceased, there existed a real or apparent danger, or a present, impending, imperious necessity to strike in order to save his own life or to save himself from a great bodily harm, and that there was no reasonable mode of escape by retreating or by avoiding the combat with safety, they must find the defendant not

guilty." (20.) "If the jury believe from the evidence that the defendant was reasonably without fault in bring-ing on the fatal difficulty, and that at the time he inflict-ed the fatal wound on the deceased there existed a real or apparent danger, or a present, impending, imperious necessity to strike in order to save himself from great bodily harm, they must find the defendant not guilty."

B. M. ALLEN, for appellant.—The demurrer to the indictment should have been sustained.—*Rogers v. State,* 117 Ala. 192; *King v. State,* 137 Ala. 47; *Noble v. State,* 59 Ala. 73; *Horton v. State,* 53 Ala. 488; *Raiser v. State,* 55 Ala. 64; *Pickett v. State,* 60 Ala. 77; *Hornsby v. State,* 94 Ala. 55. It appearing on the trial that a fact known to the grand jury was averred to be unknown, a convic-tion could not be had.—*Winter v. State,* 90 Ala. 637; *Wells v. State,* 88 Ala. 239; *James v. State,* 115 Ala. 23. The circumstances surrounding the defendant at the time of the confessions were admissible as bearing upon their voluntary character.—*Beckham v. State,* 100 Ala. 15; *Brister v. State,* 26 Ala. 128; *Bob v. State,* 32 Ala. 56; *Aiken v. State,* 35 Ala. 397; *King v. State,* 40 Ala. 314. The court should have permitted defendant to show the condition of deceased immediately prior to the killing. The remarks of the solicitor were improper and preju-dicial to the defendant. The court erred in not allow-ing the jury to take the depositions and showing out with them.

MASSEY WILSON, Attorney-General, *contra.*—The plea in abatement came too late.—*Thayer v. State,* 138 Ala. 1; *Davis v. State,* 137 Ala. 10. The motion to quash and the plea were without merit. The stenog-rapher was properly with the grand jury when the in-dictment was found.—*Thayer v. State,* 138 Ala. 39. The objection urged as to the qualifications of the grand juror is within the curative influence of Code § 5269. The demurrer to the indictment was properly overruled. *King v. State,* 137 Ala. 47. Evidence of the habits of deceased as to drinking was not admissible when of-fered.—*Suringer v. State,* 134 Ala. 120. The record does

not show what answer was expected from the witness
Roberts and the ruling cannot be reviewed.—*Ross v.
State,* 36 So. 718. The confession was properly admitted.
*Stevens v. State,* 138 Ala. 71. The question asked wit-
ness Leonard called for irrelevant testimony. The de-
fendant's character for honesty was not in issue.
*Koch v. State,* 115 Ala. 99, nor was the character of his
parents involved. The argument of the solicitor was
proper, as the statement was merely the legal effect of a
showing. The depositions and showings were properly
not allowed to go to the jury.—*Bates v. Prevle,* 150 U.
S. 148; *Stoudemire v. Harper,* 81 Ala. 242. Charges 1,
2 and 3 were properly refused.—*Devall v. State,* 63 Ala.
12; *Jones v. State,* 115 Ala. 83; *Coffin v. U. S.,* 156 U. S.
432. All of the charges were bad.—*Mann v. State,* 134
Ala. 1; *Liner v. State,* 124 Ala. 1; *Cawley v. State,* 133
Ala. 128; *Crawford v. State,* 112 Ala. 1.

DENSON, J.—The indictment in this case was for
murder in the first degree, and was returned into the
court on the 23rd of January, 1904. On the 20th of
February, 1904 the defendant was duly and legally ar-
raigned upon the indictment and pleaded not guilty,
and the 7th day of March, 1904, was set as the day for
the trial, and on that day, the defendant presented for
the first time, a motion in writing to quash the indict-
ment. This motion was overruled.

The defendant then filed a plea in abatement to the in-
dictment. The averments in the plea, upon which the
quashing of the indictment was prayed for, are the same
as those contained in the motion to quash. A demurrer
by the State to the plea was sustained, whereupon the
defendant demurred to the indictment and the demur-
rers were overruled.

The motion, plea in abatement and demurrer to the
indictment having been filed after the defendant had
pleaded to the merits of the case, it is insisted here by
the appellee, that they were filed too late, and that the
court's ruling upon them should be upheld for that rea-
son.

[Smith v. The State.]

It is undoubtedly the law, that after the defendant has upon arraignment, entered a plea of not guilty to the indictment, dilatory pleas cannot, as matter of right, be filed, and if filed without permission of the court, the court on motion could properly strike them.—*Jacksons' case,* 74 Ala. 26; *Hortons' case,* 47 Ala. 58; *Davis' case,* 131 Ala. 10; *Oakleys' case,* 135 Ala. 15.

But, the court may, in the exercise of its discretion permit the withdrawol of the plea to the merits and allow the filing of such pleas as are contained in this record. And, while the minute entry in this case, does not show in express terms, that permission was asked by and given to the defendant, to withdraw the plea to the merits for the purpose of filing the motion, plea and demurrer, it does show that they were ordered by the court to be filed and made a part of the record, that the motion was submitted to the court and overruled, that the plea was demurred to by the solicitor and the demurrer was sustained, and that the demurrer to the indictment was argued by council and the demurrer was overruled. There seems to us no escape from the conclusion that the court in the exercise of its discretion allowed the filing of said pleas, and certainly that the court and solicitor treated them as having been properly filed. Therefore, the insistence that the motion, plea and demurrer cannot be considered, because filed too late is untenable.—*Williams' case,* 3 Stew. 454; *Hubbards' case,* 72 Ala. 164; *Davis' case,* 131 Ala. 10; *Thayers' case* 138 Ala. 39.

A sufficient answer to the attack made upon the action of the court in overruling the motion to quash the indictment is, that the bill of exceptions purports to set out all the evidence, and there is not a scintilla of evidence in it, addressed to the support of the averments contained in the motion.

The question presented by the 1st and 2nd grounds of the plea in abatement has been determined adversely to the defendant in a recent decision rendered by this court, in which the Act of the Legislature, 1900-1, p. 308, which authorizes the employment of a stenographer to attend before the grand jury, when required by the so-

licitor, to take down and transcribe the testimony of witnesses before that body, was construed. On the authority of that decision we hold that there was no error in sustaining the demurrer to the 1st and 2nd grounds of the plea in abatement.—*Thayers' case,* 138 Ala. 39.

Section 5039 of the Code, provides, that the concurrence of at least twelve grand jurors is necessary to find an indictment. The record in this case shows that the grand jury which returned the indictment was composed of seventeen persons. For aught that appears in the plea, sixteen of the grand jurors heard the evidence and voted upon it to find the indictment, therefore, the demurrer to the third and fourth grounds of the plea was well sustained. It would also seem, that the plea in abatement, in so far as the 3rd and 4th grounds are concerned, fell within the express provisions of section 5269 of the Code, and for that reason might properly have been stricken from the file or demurred to.

Upon an examination of the indictment in the case of *King v. State,* 137 Ala. 47, we find that it is strikingly similar in its averments, to the indictment in the case under consideration, indeed, it would be hard to differentiate the two. In that case a similar demurrer to the one interposed to the indictment in the case here, was interposed to the indictment, and the judgment of the court in overruling the demurrer was upheld. We are satisfied with the reasoning employed and the conclusion reached in *Kings' case, supra,* and hold that there was no error in overruling the demurrer to the indictment.

Many exceptions were reserved to the rulings of the court on the admissibility of evidence.

On cross-examination, the defendant's counsel asked Dr. E. P. Lacey, the first witness who was examined in behalf of the State, this question: "Was he (the deceased) a man who drank a good deal?" The court sustained an objection to the question. A similar question was asked of Dr. Donald, and objection sustained to it. Nothing had been developed by the evidence at the time the questions were asked, which even hinted at self-defense, or any other issue which might have rendered the

evidence sought to be elicited by the questions, relevant. The court committed no error in sustaining the objections made to the questions asked of the said witness.—*Gregorys' case,* 37 So. Rep. 259. Furthermore, the question asked of Dr. Lacey implied an answer which related alone to the deceased's habits, and not to his status on the day, and at the time that the fatal blow was given. And the question asked Dr. Donald related to the condition of the deceased on the day before the difficulty.

The witness George Roberts, for the State, on direct examination, testified *inter alia,* that he saw the deceased in Etter's saloon, just before he received the injury which resulted in his death, and that he was "drinking heavily." On cross-examination the witness was asked; "What was deceased's conduct in the saloon tending to show that he was drunk or sober?" The court on objection made by the State declined to allow the witness to answer the question. It appearing from the bill of exceptions, that the statement of the witness, that the deceased was "drinking heavily," was given by the witness on the examination in chief by the State, it was the right of the defendant on cross-examination to have the witness state before the jury, the facts upon which the statement, that the deceased was "drinking heavily," was predicated. It follows that the court erred in sustaining the objection to the question.

Whether or not Conniff (the deceased) was in the saloon the day previous to the day on which he was killed, was manifestly immaterial, and its materiality not having been made to appear by any thing which preceded the asking of the question of witness Etter, by which it was sought to bring out that fact, the court did not err in sustaining the solicitor's objection to the question.

On cross-examination of witness Roberts, the defendant's counsel asked him, "did he (Conniff) do any thing unusual just before he was hurt in the saloon?" On objection of the solicitor the court refused to allow the witness to answer the question. The record is silent as to what answer from the witness was expected, so that

this court cannot pass intelligently on the ruling. Furthermore, the question was so general that irrelevant evidence would have been responsive to it.—*Ross' case,* 139 Ala. 144; *Tolbert's case,* 87 Ala. 27.

The seventh, eighth and ninth grounds of the assignment of errors relate to the court's action in sustaining objections to questions asked by the defendant of the witness Roberts, by which he sought to elicit evidence of the deceased's conduct towards the witness and others than the defendant, in the saloon just before deceased went back into the wine room where he received the fatal blow. There was nothing in the evidence at the time the question was asked and objection sustained to them, which such conduct on the part of the deceased, would have illustrated to the benefit of the defendant. The evidence sought was patently irrelevant and immaterial, and the court did not err in sustaining the objections to the questions.

Witness Leonard, the officer into whose custody the defendant was delivered by Etter soon after the deceased received the blow, after testifying that he never made any threats against defendant; nor made him any promises, nor offered him any inducements to make any statement, and that no one else did in his presence, was allowed, against a general objection made by the defendant, to testify, that, "the defendant said that he (the defendant) struck Conniff because Conniff was beating him with one of these pieces of kindling, and that he struck deceased with a hatchet." If it be conceded that the statement made by the defendant was a confession, tested by the former rulings of this court, a sufficient predicate was laid for the admission of the confession. *Thayer's case, supra, Steven's case,* 138 Ala. 71.

The 11, 12, 13, 14, 15, 16, 24 and 25 grounds in the assignment of errors relate to the same subject-matter and may be disposed of together: If it should be conceded, that the facts, which the defendant, by the questions propounded to witnesses Leonard and Gray, attempted to bring out, would have been competent if they had existed prior to or contemporaneously with the making of the statement by the defendant, such prior

or contemporaneous existence must have been shown in order to put the court in error, in sustaining the objections to the questions. So far as the record shows, the statement testified to, was made before any of the matters inquired about occurred.—*Dodson's case*, 86 Ala. 60.

The defendant's character for honesty was not in issue, and the court properly sustained the solicitor's objection to the interrogatory calling for such evidence. *Davenport's case*, 85 Ala. 336; *Funderberg's case*, 100 Ala. 36; *Walker's case*, 91 Ala. 76.

The character of the defendant's parents was not in any respect, involved in the issues in this case, and whether good or bad, was not a proper subject of inquiry. Objections to the interrogatories calling for such evidence were properly sustained by the trial court. *Kochs' case*, 115 Ala. 99.

The only phase of the deceased's character, which was in issue, was that pertaining to peace and quietude. The defendant offered testimony tending to show that the deceased's character for peace and quietude was not good, but that when drinking he was a turbulent, quarrelsome and dangerous man.

The fact, if it was a fact, that deceased claimed to have been robbed, would have had no tendency to prove that he was not a person who maintained a good character for peace and quietude. Hence, questions asked State's witnesses Houston and Crawford by defendant were improper, and the court correctly sustained the objections made to them.

There is no merit in the exception reserved to the action of the court in declining to exclude from the jury the statement of the solicitor made in his argument to the jury, with reference to the showings made by the defendant as to the absent witnesses, which showings were offered in evidence. The statement made was in keeping with the legal effect of such showings.

Certain witnesses for defendant were absent, the defendant's counsel wrote out showing of what the evidence of such witnesses would be if they were present. The solicitor admitted the showings with objections to certain parts of them, the parts objected to were indi-

cated by brackets. The depositions of certain witnesses were taken by the defendant, and to certain parts of the depositions, the solicitor objected, and those parts were indicated by brackets being marked around them. The court sustained the objections made to the showings and depositions, and the parts not objected to were read to the jury as evidence. The defendant insisted that the jury should be allowed to carry the showings and the depositions with them and have them during their consideration of the case. Upon objection being made by the solicitor the court declined to allow the showings and depositions to be carried out by the jury. The bill of exceptions shows that the portions of the showings and depositions which were not ruled out were read to the jury as evidence. By this method defendant received full benefit of such evidence. If the showings and depositions had been carried out by the jury, they would not only have had the legal evidence embraced in them, but also that which the court declared was illegal.

Section 1834 of the Code, provides, that depositions taken in accordance with the sections preceding that section, relating to the taking of depositions of witnesses, may be read in evidence so far as the same are pertinent to the issue. Section 1834 relates to depositions taken in civil cases. Section 5292 of the Code provides, that depositions taken in criminal cases are governed by the same rules that are applicable to depositions taken in civil cases at law. It further provides, that no deposition can be read in evidence on the trial, if it appears that the witness is alive, and able to attend court and within the jurisdiction of the court.

From the language of the two statutes, it would seem that it was not contemplated by the law-making body, that depositions are to be taken by the jury to their rooms and used by them in their deliberations, but that they are to be read, and the evidence of witnesses taken by depositions shall thereby be put upon the same footing as the evidence of witnesses examined *ore tenus*, no higher and no lower.

We cannot construe the language of the statutes so as to make it a matter of right on the part of the defend-

ant to have the jury take the written depositions with them for use in their deliberations upon the case, without doing violence to that language. It is at most, a matter of discretion with the court as to whether the depositions should be carried out by the jury.

"A deposition which has been read in evidence may be given to the jury when they retire to make up the verdict, if it contains no inadmissable testimony, or if the inadmissible testimony is eliminated therefrom."—Ency. Pl. & Pr. Vol. 6, § 24, p. 586.

In New Hampshire it has been held that, "where a deposition is in part incompetent it cannot be passed to the jury."—*Smith v. Nashua, etc. R. Co.,* 27 N. H. 100 ;*Shute v. Robinson,* 41 N. H. 308.

There was no error, under the facts in this case, in the rulings of the court with respect to the showings and depositions.

When an indictment alleges the means by which a homicide was committed, in the alternative, each alternative averment must be construed as a separate count.—*Thomas' case,* 111 Ala. 51; *Kings' case.*

The first count in the indictment in this case then, charges that the killing was effected by the defendant hitting the deceased with a hatchet; the second by striking him with a hatchet, while the third count alleges that the killing was done with some blunt instrument to the grand jury unknown. This mode of pleading is expressly allowed by statute.—Sections 4906 and 4911 of the Code; *James' case,* 115 Ala. 83 ;*Kings' case,* 137 Ala. 47.

If the only averment in the indictment, as to the means, or instrument with which the killing was done had been, that it was unknown to the grand jury, and the proof had shown, that the means were known to the grand jury from the evidence that was submitted to them, this state of the case would present a variance between averment and proof, which would have warranted the court in giving charges like those numbered 1 and 2 asked for by defendant and which were refused, but not charge numbered 3. But under an indictment like the one here, and where the proof shows the killing was done with a hatchet, the instrument alleged in two of

[Smith v. The State.]

the counts, the principle invoked by the charges numbered 1 and 2 respectively, has no application, unless limited to the count containing the averment that the means were unknown. There was no error in refusing charges 1, 2 and 3.—*Dorseys' case,* 134 Ala. 553; *James' case, supra; Duval and Pedhams' case,* 63 Ala. 18; *Terrys' case,* 118 Ala. 79.

Consideration of charge numbered 5 is made unnecessary by the verdict of the jury.

Refused charges 4 and 6, clearly invade the province of the jury and the court properly refused them.—*Bells' case,* 37 So. Rep. 281.

Charge 12, requested by the defendant, has been repeatedly condemned by this court.—*Averys' case,* 124 Ala. 20; *Cawleys' case,* 133 Ala. 128;*Bells' case,* 37 So. Rep. 281.

The indictment is in Code form and embraces all of the degrees of homicide, and the defendant under it, might have been convicted of manslaughter, if the jury had concluded that the evidence warranted a conviction for that offense. Hence, the court was correct in refusing charge numbered 16.—*Stoballs' case,* 116 Ala. 454; *Thompsons' case,* 131 Ala. 18; *Littletons' case,* 128 Ala. 31.

One of the indispensable elements of self-defense is, freedom from fault, and the law admits of no qualification of the requirement. Charges containing the expression, reasonably without fault in bringing on the difficulty, are erroneous and are properly refused. Refused charges 19 and 20 in the series of charges asked by the defendant are of the character above named, and the court committed no error in refusing them.—*McQueens' case,* 103 Ala. 12; *Johnsons' case,* 102 Ala. 1; *Howards' case,* 110 Ala. 92; *Crawfords' case,* 112 Ala. 1.

Charge 1 requested by the defendant, failed to set forth the constituents of self-defense and for this reason, if for no other, was properly refused.—*Miller's case,* 107 Ala. 40; *Mann's case,* 134 Ala. 1.

For the error pointed out, the judgment of conviction is reversed and the cause is remanded.

Reversed and remanded.

MCCLELLAN, C. J., HARALSON and DOWDELL, J. J., concurring.